UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY J. POLONOWSKI and
BARBARA A. POLONOWSKI,

        Plaintiffs,                  Case No. 1:20-cv-151

v.                                       Hon. Paul L. Maloney

PNC BANK, NATIONAL ASSOCIATION,

        Defendant.
                                     /

**REPORT AND RECOMMENDATION**

Plaintiffs Jeffrey J. Polonowski and Barbara A. Polonowski, husband and wife (collectively referred to as the "plaintiffs"), through counsel, have filed a "First Amended Class Action Complaint and Jury Demand" (referred to as "amended complaint" or "Amend. Compl.") against PNC Bank, National Association ("PNC"), for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*. and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*. (ECF No. 12). This matter is now before the Court on a motion to dismiss filed by defendant PNC Bank, National Association ("PNC") (ECF No. 14).

        **I.**        **The amended complaint**

Plaintiffs alleged as follows. In 1984, plaintiffs purchased a single-family residence in Otsego, Michigan, funded by a loan in the amount of $40,000.00 obtained from First Federal Savings and Loan and secured by a first mortgage on the home. Amend. Compl. at PageID.121. Over the next 30 years, plaintiffs refinanced their property multiple times. Most recently, on April 11, 2017, plaintiffs obtained a home equity line of credit from PNC in the maximum amount of

$140,000.00 (the "HELOC"), which they used to pay off the remaining $85,455.37 balance of their fifth refinance loan and $50,000.00 in business expenses. *Id*. at PageID.123.

The HELOC is a consumer credit transaction as that term is defined and used in TILA, 15 U.S.C. § 1602(i)[1], and is secured by a mortgage (the "Mortgage") of plaintiffs' residence in Otsego (sometimes referred to as the "property"). *Id*. at PageID.123-124. While some of the funds were used to pay business expenses, PNC did not use commercial credit forms or disclosures in connection with the HELOC. *Id*. at PageID.123. When PNC extended the HELOC to plaintiffs, it provided TILA disclosures which included, among other things, the interest rate of the loan, number of payments, and total finance charge. *Id*.

"On June 19, 2018, as a result of business debts personally guaranteed by them, plaintiffs filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Michigan, No. 18-02736." *Id*. at PageID.124. Polonowski Investments, LLC, described as "Plaintiff Jeffrey J. Polonowski's business," filed a Chapter 7 petition on the same date. *Id*.

On November 8, 2018, plaintiffs and PNC executed a Reaffirmation Agreement with respect to the HELOC which provided in part,

> The Annual Percentage Rate under § 128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: <u>3.900</u>%.

*Id*. (emphasis in original).

---

[1] "The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(i).

2

On November 15, 2018, plaintiffs received a bankruptcy discharge. *Id*. at PageID.125. Due to the reaffirmation agreement, the HELOC debt was not included in the discharge. *Id*. Based on these events, plaintiffs alleged that, "[n]ot later than November 15, 2018, the automatic stay resulting from Plaintiffs' Chapter 7 petition expired with respect to any acts 'to collect, assess, or recover a claim against the debtor,'" citing 11 U.S.C. § 362(a)(6), (c)(2). *Id*. Both before and after the execution and filing of the Reaffirmation Agreement, "[p]laintiffs have continued to make payments on a monthly basis to PNC toward the HELOC indebtedness." *Id*.

Despite filing bankruptcy, plaintiffs alleged that PNC was required to send them monthly statements under TILA, 15 U.S.C. § 1637(b), which provides that "[t]he creditor of any account under an open end consumer credit plan shall transmit to the obligor, for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed, a statement setting forth each of the following items to the extent applicable . . ."). *See id*. at PageID.125-126. In this regard, plaintiffs alleged that "[n]o provision of 11 U.S.C. § 362 prohibited PNC from sending periodic statements to Plaintiffs regarding the HELOC" and that "[b]ecause Plaintiffs' HELOC indebtedness was reaffirmed and not included in Plaintiffs' discharge, no provision of 11 U.S.C. § 524 prohibited PNC from sending periodic statements to Plaintiffs regarding the HELOC." *Id*. at PageID.126.

Plaintiffs addressed the alleged TILA violations stating: that "PNC has failed to send any periodic statement to Plaintiffs regarding the HELOC for each of the past 12 months;" that PNC's failure created risks that they would fail to make sufficient minimum payments resulting in default and potential foreclosure; that PNC's failure created risks that they "would make excessive payments, thus depriving them of the use of money that could otherwise be invested or used for necessities; " and that PNC "deprived Plaintiffs of information to which they

3

are legally entitled, contrary to the clear purpose and intent of TILA's provisions requiring periodic disclosures." *Id*. at PageID.126-127.

In August 2019, plaintiffs' counsel asked PNC to resume sending statements regarding the HELOC and "notified PNC of servicing errors consisting of its failure to send periodic statements to Plaintiffs via letter dated September 5, 2019." *Id*. at PageID.127. Plaintiffs alleged that this letter (the "First Notice") provided notice of an "error" under RESPA, 12 U.S.C. § 2605(k)(C), which provides that "A servicer of a federally related mortgage shall not . . . (C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[.]). *Id*.

PNC responded to the "First Notice" in a letter dated September 13, 2019. Plaintiffs allege that:

> The First Response admitted that no statements had been sent, but wrongly stated that Plaintiffs were "in an active bankruptcy proceeding." The First Response further stated that "PNC does not send billing statements on accounts that are active in bankruptcy or that have been discharged in bankruptcy."

*Id*. at PageID.127-128 (citation omitted). Plaintiffs alleged that the response was deficient because "PNC failed to determine and/or acknowledge that: (1) the HELOC had not been discharged in Plaintiffs' bankruptcy; (2) the HELOC had been reaffirmed by Plaintiffs and PNC; and (3) the discharge of Plaintiffs' dischargeable debts had already been completed", and that "PNC failed to conduct a reasonable investigation before determining that no error occurred in connection with the First Notice and First Response." *Id*. at PageID.128.

Plaintiffs' counsel sent PNC a "Second Notice" on October 7, 2019, which "specifically explained that the HELOC account was reaffirmed, not discharged, and thus not 'active in bankruptcy or discharged in bankruptcy'", and "demanded that PNC resume sending

4

periodic statements." *Id*. PNC sent a Second Response dated November 22, 2019, which "indicated PNC's position that no error had occurred," that PNC would not correct the error identified by plaintiffs, and "[a]gain without acknowledging that the HELOC account had not been discharged, was not 'active in bankruptcy,' and had been reaffirmed, the Second Response stated that 'PNC does not send billing statements on accounts that are active in bankruptcy or have been discharged in bankruptcy.'" *Id*. at PageID.128-129. In short, "PNC failed to conduct a reasonable investigation before determining that no error occurred in connection with the Second Notice and Second Response." *Id.* at PageID.129. Based on these actions, plaintiffs alleged that PNC violated RESPA, 12 U.S.C. § 2605(k)(1)(C) and that its "repeated noncompliance" with the statute "evidences a 'pattern or practice of noncompliance' with RESPA, 12 U.S.C. § 2605(f)(1)(B)." *Id*.

In their class allegations brought pursuant to Fed. R. Civ. P. 23, plaintiffs propose the following class definition:

> Every natural person with whom PNC has entered a reaffirmation agreement regarding a line of credit secured by the mortgage of such person's single-family residence, where the following are true: (1) the person resides within the United States; (2) the agreement originating the line of credit does not indicate a business or commercial loan or line of credit; (3) a discharge order was entered in favor of such person; (4) PNC has failed to send to such person a periodic statement regarding the loan or line of credit for at least one billing cycle within the twelve months preceding February 19, 2020 and after entry of the discharge order; and (5) PNC assessed interest to the loan account of such person during at least one billing cycle for which PNC did not send a statement to such person within the twelve months preceding February 19, 2020.

*Id*. at PageID.129-130. Plaintiffs allege that the questions of law and fact common to all of the proposed class members are:

> a. Whether PNC's failure to send periodic statements to class members violated TILA, 15 U.S.C. § 1637(b);
>
> b. Whether PNC's failure to send periodic statements to class members violated Regulation Z, 12 C.F.R. § 1026.7; [and]

> c. The frequency and persistence of PNC's noncompliance with TILA, and whether such noncompliance was intentional, under 15 U.S.C. § 1640(a)(4).

*Id*. at PageID.130.

Plaintiffs' amended complaint contains two counts. In Count I, plaintiffs allege that PNC violated TILA by failing to provide periodic disclosures to them as required by 15 U.S.C. §§ 1637(b)(4)-(9). *Id*. at PageID.132-133. Plaintiffs seek actual damages, statutory damages, and attorney fees for themselves and each member of the class pursuant to 15 U.S.C. § 1640(a)(1)-(3). *Id*. at PageID.133.

In Count II, plaintiffs allege that PNC violated RESPA by failing to correct its servicing error in failing to send periodic statements to plaintiffs, and failing to conduct a reasonable investigation to conclude that no error had taken place, citing 12 U.S.C. § 2605 ("Servicing of mortgage loans and administration of escrow accounts"). *Id.* at PageID.133-134. Plaintiffs seek statutory damages, actual damages, and attorney fees pursuant to 12 U.S.C. § 2605(f)(1) and (3). *Id*. at PageID.134.

### II.   PNC's motion to dismiss

#### A.   Legal Standard

PNC has moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). In this regard, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

    **B.**    **Discussion**

    **1.**    **TILA**

"It is the purpose of [TILA] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). PNC contends that plaintiffs' amended complaint should be dismissed under TILA's implementing regulations. The gist of PNC's claim is that it is exempt from sending periodic statements because this action would violate federal law. PNC relies on 12 C.F.R. § 1026.5(b), which provides in pertinent part:

(2) Periodic statements—

(i) Statement required. The creditor shall mail or deliver a periodic statement as required by § 1026.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed. A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, if the creditor has charged off the account in accordance with loan-loss provisions and

7

> will not charge any additional fees or interest on the account, or <u>if furnishing the statement would violate Federal law</u>.

12 C.F.R. § 1026.5(b)(2)(i) (emphasis added).

Title 11 U.S.C. 362, the statute creating the automatic stay, is a "Federal law" within the meaning of 12 C.F.R. § 1026.5(b)(2)(i). Federal courts have held that creditors violate the automatic stay by sending monthly statements to debtors in bankruptcy. *See e.g., In re Draper*, 237 B.R. 502, 506 (M.D. Fla. 1999) (monthly statements sent by a creditor who had knowledge that a debtor was in an active bankruptcy violated the automatic stay.); *In re Cousins*, 404 B.R. 281, 283-84, 288 (S.D. Ohio 2009) ("information account statement" with current balance and "voluntary payment coupon" violated automatic stay and "may be confusing to a debtor"); *In re Brown*, 481 B.R. 351, 355, 360-61 (W.D. Pa. 2012) (statements without a bankruptcy disclaimer sent after a Chapter 7 discharge of the mortgage debt that "provide the amount of the payment and when it is due, a late charge if the payment is not received by a certain date, and the past due amount" were found to "seek payment from the Debtor and violate the discharge injunction").

PNC submits that the "Federal law" exception in § 1026.5 exists so that it and other creditors "'need not' send periodic statements at peril of contempt based [upon] what might later be judged a violation of the stay." PNC's Brief (ECF No. 15, PageID.191). *See In re Nicole Gas Production, Ltd.*, 916 F.3d 566, 578 (6th Cir. 2019) ("[v]iolating the automatic stay constitutes civil contempt"); 11 U.S.C. § 362(k)(1) (an individual injured by any willful violation of a stay provided by this section includes actual damages, costs, attorney fees, and "in appropriate circumstances," punitive damages). PNC contends that "nothing in Section 1026.5(b)(2)(1) requires PNC to provide periodic statements while Plaintiffs' bankruptcy case remains open and the automatic stay enjoining acts against property of the estate (i.e., the collateral securing PNC's mortgage) remains in place," citing 11 U.S.C. §§ 362(a)(3)-(5), (c)(1). PNC's Brief at PageID.191.

8

The actions subject to the stay include: "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" (11 U.S.C. § 362(a)(3)); "any act to create, perfect, or enforce any lien against property of the estate" (11 U.S.C. § 362(a)(4)); and, "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title" (11 U.S.C. § 362(a)(5)). With exceptions not applicable here, "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate[.]" 11 U.S.C. § 362(c)(1).

As discussed, plaintiffs were discharged on November 15, 2018. However, because the real property was still part of the bankruptcy estate, it remained subject to the automatic stay. *See Polonowski*, 18-02736 (Individual Estate Property Record and Report) (Dec. 31, 2019) (ECF No. 15-1, PageID.202). As one court explained,

> [T]he automatic stay terminates with respect to acts against property of the estate when the property is no longer property of the estate. § 362(c)(1), Bankruptcy Code. It terminates with respect to all other acts when the debtor is granted or denied a discharge. § 362(c)(2)(C), Bankruptcy Code. In this case, the debtor received a discharge on July 16, 2008, and the [real] property ceased to be property of the estate on November 10, 2008, when an order was entered granting the debtor's motion to compel the trustee to abandon the property.

*In re Sharif*, 411 B.R. 276, 280 (Bankr. E.D. Va. 2008). *See In re Reuss*, No. BKR. DT-07-05279, 2011 WL 1522333 at *2, fn. 3 (Bankr. W.D. Mich. April 12, 2011) ("The automatic stay of an act against property continues as long as the property remains within the estate, irrespective of case closing, dismissal, or discharge. Compare 11 U.S.C. § 362(c)(1) with *id*. § 362(c)(2)."). Based on this record, the Court concludes that PNC's mailing of periodic statements to plaintiffs during the pendency of a bankruptcy would violate Federal law, and for that reason, PNC was exempt from sending the statements pursuant to 12 C.F.R. 1026.5(b)(2)(i).

In reaching this determination, the Court has considered plaintiffs' contention that PNC's argument conflates the collection stay, which ended upon entry of the Discharge Order on November 15, 2018), with the automatic stay of acts "against property of the estate," which continues until the property in question is no longer in the estate. *See* Plaintiffs' Response (ECF No. 17, PageID.240). Plaintiffs contend that the sending of a periodic statement is an attempt to collect a monetary claim which is not prohibited after entry of a discharge order. Thus, "[a] periodic statement disclosing the finance charge, periodic rate, outstanding balance, and minimum payment, as 15 U.S.C § 1637(b) requires, does not even suggest any act against property of the estate, let alone threaten or comprise such an act." *Id*. at PageID.241). Rather, plaintiffs point out that acts against the property of an estate include acts such as an attempt to foreclose property, *see In re Markoch*, 583 B.R. 911, 913-14 (Bankr. W.D. Mich. 2018), and the recording of a sheriff's deed after a foreclosure sale, *see In re Penfil*, 40 B.R. 474, 476 (Bankr. E.D. Mich. 1984). Plaintiffs identify "[t]he common thread" of acts against property of the estate that are enjoined by the automatic stay as "actions to 'obtain possession of property of the estate or . . . to exercise control over property of the estate.'" Plaintiffs' Response at PageID.241 (emphasis omitted), citing *In re Nicole Gas Production, Ltd.*, 916 F.3d at 570 (quoting 11 U.S.C. § 362(a)(3)).

The Court disagrees with plaintiffs' contention that the prohibited acts against property are limited to actions seeking possession of the property. Sending a periodic statement to the debtor can also be considered an "act against the property of the estate". To quote the full paragraph from *Nicole Gas Production, Ltd.*:

> As to the bankruptcy gloss on this dispute, the Bankruptcy Code imposes a powerful stay on parties attempting to gain control over the property of the debtor's estate. *See* 11 U.S.C. § 362(a)(3) ("[A] petition . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate"). The policy imperative behind the automatic stay is to "give[ ] the debtor a breathing

spell from creditors and stop[ ] foreclosure actions, collection efforts, and creditor harassment." 2 Norton Bankr. L. & Prac. 3d § 43:4 (2019).

*Nicole Gas Production, Ltd.*, 916 F.3d at 570.

Consistent with the Sixth Circuit's opinion, other courts have concluded that the automatic stay extends to "collection efforts and creditor harassment". *See, e.g.*, *In re Newcomer*, 438 B.R. 527, 537-38 (Bankr. D. Md. 2010) (the court held that defendant Litton Loan Servicing violated § 362(a)(3) by sending letters threatening foreclosure against property of the estate, even though it did not actually foreclose (*i.e.*, took no further action on the letters)); *In re Stark*, 242 B.R. 866, 872 (Bankr. W.D.N.C. 1999) (the defendant violated § 362(a)(3) by mailing monthly statements to the debtors attempting to collect certain fees). *Cf. Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (1st Cir. 2003) ("postpetition bookkeeping entries by Chase did not implicate Bankruptcy Code § 362(a)(3), since such unilateral accruals of amounts assertedly due, but in no manner communicated to the debtor, the debtor's other creditors, the bankruptcy court, nor any third party, plainly are not the sort of 'act' Congress sought to proscribe"). For all of these reasons, PNC's motion to dismiss should be granted as to the TILA claims.[2]

    **2.**    **RESPA**

Congress' intent in enacting RESPA was "to ensure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." *Vega v. First Federal Savings & Loan Association of Detroit*, 622 F.2d 918, 923 (6th Cir. 1980) (quoting 12 U.S.C. § 2601(a)).

---

[2] The thrust of PNC's motion is that it complied with 12 C.F.R. 1026.5(b)(2)(i), "PNC did exactly what Regulation Z authorized; it stopped sending periodic statements when Plaintiffs filed for bankruptcy. That should end Plaintiffs' TILA claim." PNC's Brief at PageID.190. PNC's other arguments are, in a sense, variations of that theme. Having addressed PNC's basic argument, and determined that PNC's position is well-supported, the undersigned finds no reason to address its alternate arguments for relief.

The basis for plaintiffs' RESPA claim is that their HELOC "is a 'federally related mortgage loan' as that term is defined in RESPA, 12 U.S.C. § 2602(1), because the indebtedness is secured by a lien on Plaintiffs' residential real property and made by PNC." Amend. Compl. at PageID.124.

Plaintiffs' RESPA claim fails because the definition of a "mortgage loan" in RESPA's implementing regulation explicitly excludes open-end lines of credit such as their HELOC:

> Mortgage loan means any federally related mortgage loan, as that term is defined in § 1024.2 subject to the exemptions in § 1024.5(b), but does not include open-end lines of credit (home equity plans).

12 C.F.R. § 1024.31. In *Chamberlain v. Specialized Loan Servicing, LLC*, No. 21-CV-03541-HSG, 2021 WL 2383340 (N.D. Cal. June 10, 2021), the court rejected a similar claim in denying the plaintiff's motion for a temporary restraining order, stating in pertinent part that:

> The provisions of RESPA cited by Plaintiff in the FAC apply to "any federally related mortgage loan, as that term is defined in § 1024.2 subject to the exemptions in § 1024.5(b), *but do*[ ] *not include open-end lines of credit (home equity plans)*." 12 C.F.R. § 1024.31 (emphasis added); *see also* 12 C.F.R. § 1024.30 (specifying that "this subpart applies to any mortgage loan, as that term is defined in § 1024.31"). In the FAC, Plaintiff specifically alleges that his loan is "a Home Equity Line of Credit." FAC ¶ 11.

*Chamberlain*, 2021 WL 2383340 at *2. Like the plaintiff in *Chamberlain*, plaintiffs alleged in their amended complaint that they "obtained a home equity line of credit." Amend. Compl. at ¶ 22, PageID.123.

The undersigned agrees with the court's reasoning in *Chamberlain*. In short, 12 C.F.R. § 1024.31 means what it says. Accordingly, PNC's motion to dismiss should be granted as to plaintiffs' RESPA claims.

12

### III. RECOMMENDATION

Accordingly, I respectfully recommend that defendant PNC's Motion to dismiss (ECF No. 14) be **GRANTED** and that this action be **TERMINATED**.

Dated:  September 1, 2021              /s/ Ray Kent
                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).